**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In Re:

SMOKIN' DUTCHMAN HOLDINGS, LLC                    Case No. 24-02343
f/k/a Smokin' Dutchman LLC,

    Debtor.                                                         Hon. Scott W. Dales

_____/

**DECLARATION OF KRAGE FOX IN SUPPORT OF DEBTOR'S**
**MOTIONS FOR FIRST DAY RELIEF**

    I, Krage Fox, Member of Smokin' Dutchman Holdings, LLC f/k/a Smokin' Dutchman LLC, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

**I.    Introduction**

    1.    Smokin' Dutchman Holdings, LLC f/k/a Smokin' Dutchman LLC ("Debtor") was founded in . The Debtor has operated restaurants pursuant to Franchise Agreements with Dickey's Barbecue Restaurants, Inc. ("Dickey's").

    2.    The Debtor operates restaurants in four (4) locations located in Kalamazoo, Michigan, Jenison, Michigan, Holland, Michigan, and Rockford, Michigan. The Debtor opened its Kalamazoo, Michigan location in 2018. It acquired the Rockford and Jenison locations in 2020. It opened the Holland location in 2022.

    3.    The Debtor's annual revenues from 2022 through 2023 have ranged from $3,681,000 to $3,336,000. In 2024 to date, the Debtor has generated revenues of approximately $2,000,000.

1

4.      I have managed the day to day operations of the Debtor since its inception and continue to manage the day to day operations.

5.      The Debtor enters this Chapter 11 Case with approximately $2.1 million in debt. This consists of the following debts for which the creditor claims security:

| CREDITOR | AMOUNT |
|---|---|
| Huntington National Bank | $ 194,000 |
| Kalsee Credit Union | $ 448,000 |
| Dahl BQ | $ 273,000 |
| US Small Business Administration | $ 560,000 |
| IDEA 247 | $ 130,000 |
| Michigan Department of Treasury | $ 158,000 |
| Total | $1,763,000 |

6.      Some of the Cash Collateral Secured Creditors also assert a security interest in other assets of the Debtor including general intangibles, goods, machinery and equipment. The Debtor estimates the value of those other assets is approximately $86,500, exclusive of amounts owed to the Debtor by Dickey's and claims the Debtor has against Dickey's.

7.      The Debtor estimates its unsecured nonpriority debt at approximately $271,000, exclusive of any deficiency amounts owed to secured creditors in excess of value of their collateral.

8.      The Debtor needs to utilize its cash, accounts receivable, and inventory to fund its ongoing operations to preserve the going concern value of the Debtor.

9.      The Chapter 11 Case was filed to preserve and maximize the value of the Debtor's assets for the benefits of all stakeholders. The Debtor needs to reduce the debt relative to

the value of its assets. In addition, the Debtor intends to seek this Court's authority to reject the Dickey's Franchise Agreements to alleviate the Debtor from the burden imposed upon it by Dickey's.

10. The Debtor needs to utilize its cash, accounts receivable, and inventory to fund its ongoing operations to preserve the going concern value of the Debtor.

## II. Background of Declarant

11. I am the Fifty Percent (50%) Member of the Debtor. I have also managed the day to day operations of the Debtor since its inception. President and Chief Executive Officer of the Debtor. I submit this Declaration to offer the Court and parties in interest a background of the Debtor and the circumstances leading to the commencement of the Chapter 11 Case and provide evidentiary basis for the relief requested in the applications and motions filed at the commencement of this Case ("First Day Motions").

12. I am generally familiar with the Debtor's day-to-day operations, businesses, financial affairs, and books and records. Unless otherwise stated, all facts in this Declaration are based upon my personal knowledge, my discussions with members of the Company's management team, outside advisers to the Company, and my review of documents and information concerning the Debtor's operations, financial affairs, and restructuring efforts, and/or my personal opinion based upon my experience and general knowledge about the Debtor and the industry in which it operates.

13. I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtor. If called to testify, I would testify to the matters set forth herein.

### III. Discussion

#### A. History and Business Overview

14. The Debtor's sole business has been to operate restaurants as set forth above.

15. The Debtor's financial difficulties have been caused by the actions of Dickey's which have imposed extreme and unreasonable demands upon the financial resources of the Debtor and the time of the Debtor's employees.

16. The Debtor has approximately 26 employees. The employees are compensated in various ways. This includes hourly, salary, and manager bonus based compensation.

### IV. First Day Motions

17. I have reviewed the cash flow projections submitted in support of the First Day Motions and believe the projections are fair and reasonable projections of the Debtor's revenues and operating expenses during the period reflected in the projections.

18. I believe the Debtor can operate in accordance with the budget set forth in the cash collateral projections

19. The Debtor's continued use of its cash collateral is necessary to maintain its business operations and pay its employees, vendors for post-petition supplies, utilities, Chapter 11 administrative expenses and other post-petition expenditures during the course of the Chapter 11 Case.

20. If the Debtor is not able to use cash collateral, it will suffer immediate and irreparable harm in that it will not be able to continue to operate and will lose the going concern value as well as value of the Debtor's accounts receivable, inventory and other assets.

21. The Debtor receives various utility services essential to its ongoing operations. The adequate assurance of payment proposed in the Debtor's First Day Motions will provide each utility with adequate assurance of payment for post-petition services rendered to the Debtor. The Debtor has historically, timely, and faithfully paid its utility expenses prior to the bankruptcy filing.

22. The Debtor has filed in this Case the following First Day Motions:

   A. Debtor's Motion for Entry of Final Orders Authorizing the Use of Cash Collateral, Providing Adequate Protection to Secured Creditors and for Preliminary and Final Relief on Motion and Related Relief.

   B. Motion for Interim and Final Orders Approving the Debtor's Proposed Form of Adequate Assurance of Payment to Utility Providers Establishing Procedures for Resolving Objections by Utility Providers and Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Services.

   C. Debtor's Motion for Order Authorizing Payment of Pre-Petition Employee Wages and Compensation, Employee Benefits and Related Obligations and Authorizing Banks to Honor Pre-Petition Checks for Payment of Pre-Petition Employee Obligations.

23. The Debtor has filed the First Day Motions to continue its current operations in Chapter 11 with as little disruption as possible, maintain the confidence and support of its vendors, customers, employees, and other stakeholders. I have reviewed each of the First Day Motions and believe the facts stated there to be true and correct to the best of my knowledge with

appropriate reliance upon the Debtor's officers, management, employees, and advisers. I incorporate by reference the factual statements in each of the First Day Motions as set forth herein.

24. I believe that the relief sought in the First Day Motions is necessary to successful implementation of the Debtor's efforts to maximize the value of its estate. It is my further belief that, with respect to the First Day Motions, authority to pay specific pre-petition claims or continuing selected pre-petition programs, the relief requested is essential to the maintenance of the Debtor's operations and necessary to avoid immediate and irreparable harm to the Debtor and Debtor's estate and its creditors.

25. The success of his Chapter 11 Case depends upon the Debtor's ability to preserve its operations while it restructures its financial obligations. The relief requested in the First Day Motions is a critical component of maintaining the confidence of the stakeholders in this Case to implement the strategy.

26. I respectfully request that all the relief requested in the First Day Motions, and such other and further relief as may be just and proper, be granted.

I declare under penalty of perjury that the foregoing *Declaration of Krage Fox in Support of Debtor's Motions and Request for First Day Relief* is true and correct.

Dated:  September 9, 2024                         /s/ Krage Fox
                                                  Krage Fox, Member
                                                  Smokin' Dutchman Holdings, LLC

# EXHIBIT A

| | 9/9/2024 | 9/16/2024 | 9/23/2024 | 9/30/2024 | 10/7/2024 | 10/14/2024 | 10/21/2024 | 10/28/2024 | November | December | January | February | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales Revenues | $60,863 | $61,429 | $59,551 | $57,881 | $62,658 | $56,669 | $64,745 | $57,115 | $256,000 | $240,000 | $209,000 | $248,000 | $1,433,911 |
| | | | | | | | | | | | | | $0 |
| Inventory Purchases | $ 22,243 | $ 22,768 | $ 20,863 | $ 20,373 | $ 23,643 | $ 20,252 | $ 24,742 | $ 20,340 | | | | | $175,224 |
| Manager Salary | $ 10,306 | $ 10,306 | $ 10,306 | $ 10,306 | $ 10,306 | $ 10,306 | $ 10,306 | | $ 20,612 | $ 20,612 | $ 20,612 | $ 20,612 | $123,672 |
| Hourly Payroll | $ 15,425 | $ 15,425 | $ 15,425 | $ 15,425 | $ 15,425 | $ 15,425 | $ 15,425 | | $ 30,850 | $ 30,850 | $ 30,850 | $ 30,850 | $185,100 |
| Admin Payroll | $ 3,041 | $ 3,041 | $ 3,041 | $ 3,041 | $ 3,041 | $ 3,041 | $ 3,041 | | $ 6,082 | $ 6,082 | $ 6,082 | $ 6,082 | $36,492 |
| Payroll service fees | $ 185 | $ 185 | $ 185 | $ 185 | $ 185 | $ 185 | $ 185 | | $ 370 | $ 370 | $ 370 | $ 370 | $2,220 |
| Payroll taxes | $ 2,813 | $ 2,813 | $ 2,813 | $ 2,813 | $ 2,813 | $ 2,813 | $ 2,813 | | $ 5,626 | $ 5,626 | $ 5,626 | $ 5,626 | $33,756 |
| Royalties and Ad Fund | $ 5,478 | $ 5,529 | $ 5,360 | $ 5,209 | $ 5,639 | $ 5,100 | $ 5,827 | $ 5,140 | | | | | $43,282 |
| Rent Arrearage Cure | | | | $ 21,144 | | | | | $ 21,144 | $ 21,144 | $ 21,567 | $ 21,567 | $32,150 |
| Rent | $ 595 | | | | $595 | | | | $595 | $595 | $595 | $595 | $105,566 |
| Digital Fees | $ 3,563 | 3196 | 3563 | 3196 | 3196 | $3,563 | $3,196 | $3,563 | $13,518 | $14,554 | $10,995 | $19,004 | $3,570 / $85,107 |
| Third Party Vendor fees | $ 160 | 160 | 160 | 160 | 160 | $160 | $160 | $160 | $640 | $640 | $650 | $650 | $3,860 |
| Bank and Credit Card Fees | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $ 1,200 | $4,800 | $4,800 | $5,000 | $5,000 | $29,200 |
| Local Advertising | | | | | | | | | | | | | $500 |
| License Fees | | 1840 | | | | $1,840 | | | $1,840 | $1,850 | $1,850 | $1,850 | $11,070 |
| Business Insurance (W/C, auto, liability, property, etc) | $ 989 | | | | $989 | | | | $1,000 | $1,000 | $1,000 | $1,000 | $5,978 |
| Health Ins. | $ 2,580 | 5443 | | | $2,580 | 5443 | | | $8,028 | $8,028 | $8,028 | $8,028 | $48,158 |
| Electric | | | 105 | | | $105 | | | $105 | $105 | $105 | $105 | $630 |
| Water | | | | | | | | | | | | | $600 |
| Gas | | | 1120 | | | $1,120 | | | $1,120 | $1,120 | $1,120 | $1,120 | $6,720 |
| Specialized Disposal Services | | 488 | 308 | | $488 | | $308 | | $310 | $310 | $310 | $310 | $1,856 |
| CO2 | | | | | | | | | $488 | $488 | $488 | $488 | $2,928 |
| Phone/Internet/Cable | $ 218 | $ 218 | $ 218 | 218 | $ 218 | | $ 218 | | $872 | $872 | $872 | $875 | $5,235 |
| Supplies and Equipment | | 550 | | 550 | $550 | | | | $1,100 | $1,100 | $1,100 | $1,100 | $6,600 |
| Pest Control | | | | 152 | | | | | $152 | $152 | $152 | $152 | $912 |
| Repairs and Maintenance | $ 256 | 256 | 256 | 256 | 256 | 256 | 256 | 256 | $1,024 | $1,025 | $1,025 | $1,025 | $6,147 |
| Cleaning | $ 118 | 118 | 118 | 118 | 118 | 118 | 118 | 118 | $472 | $475 | $475 | $475 | $2,841 |
| Dues and Subscriptions | $ 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | $100 | $100 | $100 | $100 | $500 |
| Office Supplies | $ 195 | 195 | 195 | 195 | 195 | 195 | 195 | 195 | $780 | $780 | $780 | $780 | $4,680 |
| Software | $ 288 | 288 | 288 | 288 | 288 | 288 | 288 | 288 | $1,152 | $1,152 | $1,152 | $1,152 | $5,912 |
| Meals, Meetings, Travel | $ 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | $160 | $160 | $160 | $160 | $960 |
| Uniforms | $ 37 | 37 | 37 | 37 | 37 | 37 | 37 | 37 | $148 | $148 | $148 | $148 | $988 |
| Vehicle Expense | $ 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | $1,100 | $1,100 | $1,100 | $1,100 | $6,600 |
| Professional Service Fees | | | | | | | | | | | | | $0 |
| Bankruptcy Attorney (Perry Pastula) | 0 | 0 | 0 | 0 | 0 | 0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Special Counsel | | | 2000 | | | | $2,000 | | $3,000 | $3,000 | $3,000 | $3,000 | $16,000 |
| Bankruptcy Trustee | | | | 2500 | | | | | $2,500 | $2,500 | $2,500 | $2,500 | $15,000 |
| Bookkeeping | 300 | 300 | 300 | 300 | 300 | 300 | $300 | $300 | $1,200 | $1,500 | $1,200 | $1,500 | $7,800 |
| Tax Accountants | | | 2000 | | | | $2,000 | | $3,000 | $3,000 | $3,000 | $3,000 | $16,000 |
| | | | | | | | | | | | | | $0 |
| | | | | | | | | | | | | | $0 |
| Net Cash Flow | -$9,467 | $18,503 | -$10,342 | $1,337 | -$8,866 | $16,321 | -$9,127 | $306 | $143,266 | $104,762 | $44,238 | $107,676 | $398,587 |
| Starting Cash | $16,000 | $6,533 | $25,037 | $14,695 | $16,032 | $7,166 | $23,486 | $14,359 | $14,665 | $157,921 | $262,683 | $306,921 | $1,035,314 |
| Ending Cash | $6,533 | $25,037 | $14,695 | $16,032 | $7,166 | $23,486 | $14,359 | $14,665 | $157,921 | $262,683 | $306,921 | $414,597 | |