IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re

SMOKIN' DUTCHMAN HOLDINGS, LLC

f/k/a Smokin' Dutchman, LLC

Debtor.

Case No. 24-02343

Chapter 11, Subchapter V

Filed 09/09/2024
Hon. Scott W. Dales

## SMOKIN' DUTCHMAN HOLDINGS, LLC
## COMBINDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION
## UNDER SUBCHAPTER V OF CHAPTER 11
## (SMALL BUSINESS REORGANIZATION ACT)

### Background

<u>Description and history of the Debtor's business</u>.

The Debtor, Smokin' Dutchman Holdings, LLC ("Debtor"), as a Michigan Limited Liability Company formed in 2017 under the name of Smokin' Dutchman, LLC. The sole members of the Debtor were from the beginning and still are Krage Fox and Michael Kakabeeke. The Debtor's original name was Smokin' Dutchman, LLC. On December 7, 2021 the Debtor amended its name to Smokin' Dutchman Holdings, LLC.

The Debtor operates four (4) restaurants as a franchisee of Dickey's Barbecue Restaurant, Inc. ("Dickey's"). The restaurants are located in Kalamazoo, Michigan; Jenison, Michigan; Holland, Michigan; and Rockford, Michigan.

The Debtor opened its Kalamazoo location in 2018. It acquired the Rockford and Jenison locations in 2020, which were existing Dickey's franchisee operations. In 2022 the Debtor built out and opened the Holland store as a new franchise location.

The Debtor's original restaurant in Kalamazoo was profitable in 2018 and 2019. The COVID 19 pandemic in 2020 impacted the Debtor's operations. In particular, the public's use of third-party vendors for ordering and delivery of restaurant products significantly increased. The third-party vendors include Grub Hub, Door Dash, and others. Dickey's forced the Debtor to participate in the third-party vendor system established by Dickey's. The Debtor was not permitted to negotiate its own agreements with the third-party vendors. The Debtor has paid the following third-party vendor fees from 2020 through 2024:

1

| YEAR | AMOUNT | PERCENTAGE OF REVENUES |
|---|---|---|
| 2020 | $113,558.00 | 12% |
| 2021 | $187,545.00 | 17% |
| 2022 | $248,050.00 | 22% |
| 2023 | $225,041.00 | 23% |
| 2024 | $117,530.00 | 23% through August 30, 2024 |

The above amounts do not include Door Dash Drive fees charged through the Dickey's APP and their web page. Dickey's has also charged the Debtor royalties and marketing fees on the amounts paid to third-party vendors. Dickey's agreement with Door Dash Drive provides for free delivery and therefore the Debtor pays for the free delivery of orders processed through Door Dash Drive.

In summer 2023, the Debtor's inhouse accountant began to dig into the Debtor's records and its relationship with Dickey's. It was discovered that Dickey's was not providing proper accounting to the Debtor and was not paying rebates and other funds owing to the Debtor. Since that time, the Debtor has attempted to obtain the information from Dickey's and to obtain accurate accounting. To date that has not occurred.

The Debtor commenced the Chapter 11 Case in an effort to reorganize. This will include the Debtor taking action to terminate, revoke, or rescind its franchise agreements with Dickey's. The Debtor is attempting to negotiate a resolution with Dickey's. If the Debtor is unable to negotiate a resolution it will retain special counsel to bring an action to provide the remedies the Debtor needs to move forward.

<u>Description of Operations during Chapter 11</u>.

During the course of the Chapter 11 Case the Debtor has continued to operate all four (4) locations. The Debtor has been in negotiations with Dickey's to terminate its relationship with Dickey's to allow the Debtor to continue operations as a restaurant free of any restrictions or obligations under the Dickey's franchise agreements. The negotiations may include the Debtor selling one or more of its locations to a Buyer who would operate as a Dickey's franchisee.

<u>The Debtor's Proposed Chapter 11 Plan.</u>  The Debtor's plan is to fund distributions to allowed claimants from future profits of the Debtor and any recovery from Dickey's.

The Debtor's Plan is to take action terminate its agreements with Dickey's. The Debtor will close or sell the Rockford, Michigan location or sell it to an acceptable buyer. If the Debtor reaches a settlement with Dickey's, it may also include agreeing to sell the Jenison, Michigan location. Absent an agreement with Dickey's, the Debtor will rebrand its operations and continue to operate restaurants at the Kalamazoo, Jenison, and Holland locations.

The Debtor has been negotiating with investors to provide capital for the rebranding. The Debtor will also obtain funds necessary to pay a retainer to counsel to proceed with the litigation with Dickey's.

The Debtor's Plan will pay secured creditors the allowed amount of their secured claim based upon their priority and a determination of their secured status as allowed under 11 U.S.C. § 506(a). The proposed treatment for each creditor is set forth below. The Debtor believes that only the Huntington National Bank and the U.S. Small Business Administration will hold secured claims. This is based upon the value of the Debtor's assets and priority of the secured creditor's security interest.

This case was filed under subchapter V of Chapter 11 of the Bankruptcy Code. Scott A. Chernich has been appointed the subchapter V Trustee. The Debtor has retained the law firm of Dunn, Schouten & Snoap P.C. to represent it in the Bankruptcy Case.

Liquidation analysis. To confirm the Plan, the court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

Ability to make future plan payments and operate without further reorganization. The Debtor as the Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Plan Proponent will provide projected financial information. The final Plan payment is expected to be paid on May 15, 2030.

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

**The Liquidation Analysis shows that in the event the Debtor ceased operations and liquidated its assets there would be no funds available for distribution to priority claimants or unsecured creditors. Moreover, the Debtor's projections show it will have the ability to make distributions to creditors under the Plan. Therefore, the Debtor urges all creditors and claimants to accept the Plan.**

## Article 1: Summary

This Plan of Reorganization ("the Plan") under chapter 11 of the Bankruptcy Code ("the Code") proposes to pay creditors of the Debtor from cash flow from operations.

This Plan provides for:
- 1    class of priority claims;
- 2    classes of secured claims;
- 1    class of non-priority unsecured claims; and
- 1    class of equity security holders.

Certain creditors have asserted secured claims. However, the Debtor will dispute those secured claims. These include the following:

1. DAHL BQ, INC. This creditor has filed claim in the amount of $277,621.41. It alleges the claim is secured in the amount of $56,000.00. However, this creditor

3

holds a third-priority security interest in the Debtor's assets.  There are creditors with higher priority security interests whose claims exceed the value of the Debtor's assets.  Thus, this creditor's claim should be disallowed as a secured claim, but allowed as a Class 4 non-priority unsecured claim.

2. <u>KALSEE Credit Union.</u>  This creditor holds a security interest in the Debtor's assets.  However, the amount of secured claims with priority over this creditor's claim exceeds the value of the Debtor's assets.  Thus, there is no collateral to support secured status of this creditor. The Debtor will object to the secured status of this creditor and ask the Court to allow its claim as a non-priority, unsecured claim in Class 4.

3. <u>IDEA 247 INC</u>.  This creditor claims a security interest in the Debtor's assets.  The amount of secured claims with priority over this creditor's claim exceeds the value of the Debtor's assets.  Thus, there is no collateral to support secured status of this creditor. The Debtor will object to the secured status of this creditor and ask the Court to enter an order allowing the claim as a non-priority, unsecured claim in Class 4.

4. <u>Michigan Department of Treasury</u>. This creditor holds a security interest in the Debtor's assets.  The amount of secured claims with priority over this creditor's claim exceeds the value of the Debtor's assets.  Thus, there is no collateral to support secured status of this creditor. The Debtor will object to the secured status of this creditor and ask the Court to enter an order allowing the claim as a priority tax claim under 11 U.S.C. § 507(a)(8) to the extent it is for unpaid prepetition taxes and interest.  To the extent the claim is for penalties or other charges the Debtor will ask the Court to enter an order allowing that portion of the claim as a non-priority, unsecured claim in Class 4.

The Plan provides for payment of administrative and priority claims in full.

Non-priority unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan proposes to pay them approximately 10% of the allowed amount of their claims.  The Debtor estimates the total allowed amount of non-priority unsecured claims will be approximately $1,807,000.00.

All creditors and equity security holders should refer to Articles 2 through 6 of this Plan for information regarding the precise treatment of their claim.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.

### Article 2:  Classification of Claims and Interests

2.01   <u>Class 1</u>.  All allowed claims entitled to priority under Code § 507(a) (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). The Debtor does not believe there are any claims entitled to priority under Code § 507(a), exclusive of administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8).

4

The administrative expense claims and priority tax claims will be treated in accordance with the provisions of Article 3 below.

  2.02 <u>Class 2</u>.  Class 2 is comprised of the claims of Huntington National Bank (HNB).

  2.03 <u>Class 3</u>.  Class 3 is comprised of the secured claim of the U.S. Small Business Administration ("SBA").  SBA holds a second priority security interest in the Debtor's assets.  The SBA has filed a claim in the amount of $562,166.04.  However, the value of the Debtor's assets after deducting the amount of secured debt with higher priority does not support allowance of the SBA's claim in full.  The Debtor believes the value of the Debtor's assets after deducting the secured claim of higher priority creditors is $11,690.00.  The Debtor's Plan proposes to allow the SBA a secured claim in the amount of $11,690.00 with the balance of $550,476.04 being allowed as a non-priority unsecured claim in Class 4.

  2.04 <u>Class 4</u>.  All non-priority unsecured claims allowed under Code § 502.  The Debtor estimates the total claims in this Class will be approximately $1,807,000.

  2.05 <u>Class 5</u>.  Equity interests of the Debtor.  The sole claimants in this class is Krage Fox and Michael Kakabeeke.  Each holds 50% of the membership interests in the Debtor.

### Article 3:  Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees

  3.01 <u>Unclassified claims</u>.  Under Code § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

  3.02 <u>Administrative expense claims</u>.  Each holder of an administrative expense claim allowed under Code § 503 will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.  The Debtor estimates administrative expense claims will total approximately $25,000.  This will include attorney fees for the Debtor's counsel, accounting fees, Subchapter V Trustee fees and claims allowed under 11 U.S.C. 503(b)(9). No payment will be made on any professional fees or other administrative expenses until approved by the Court in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules. The claim of the Subchapter V Trustee shall be paid upon confirmation.

  3.03 <u>Priority tax claims</u>.  Each holder of a priority tax claim will be paid in equal monthly installments consistent with Code § 1129(a)(9)(C), including interest at the statutory rate.  Priority tax and secured claims have been filed in the total amount of $427,145.00.  The amount is subject to reduction once the actual tax liability is determined.

  3.04 <u>Statutory fees</u>.  All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date.

## Article 4: Treatment of Claims and Interests Under the Plan

Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1-Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. The Debtor does not believe there are any claims in this class. Any administrative expense claims or priority tax claims are treated in accordance with Sections 3.02 and 3.03 above. |
| Class 2- Huntington National Bank Claims | Impaired | Class 2 is impaired by this Plan. The claims in this class shall be paid in equal monthly installments in the amount of $4,400.00 commencing April 15, 2025 until the entire allowed amount of the claim is paid in full. Huntington National Bank will retain its interest in its collateral until the allowed secured claim is paid in full. Interest shall be paid on this claim at the contract rate of the prime interest plus 2%. The current interest rate will be 9.75%. Huntington National Bank will terminate its security interest in its collateral upon payment of the allowed amount of its claim, including interest and all other amounts allowed under 11 USC § 506(a). The current amount owed is $205,410.00. |
| Class 3- U.S. Small Business Administration | Impaired | Class 3 is impaired by this Plan. This claim shall be allowed in the amount $11,690.00 as a secured claim. The balance owed to the SBA shall be paid as a non-priority unsecured claim under Class 4. The secured claim of the SBA shall be paid in monthly installments in the amount of $214.00 commencing April 15, 2025 until the entire allowed amount of the secured claim is paid in full. Interest will be paid on this claim at |

6

|  |  |
|---|---|
|  | the contract rate of 3.75%.  SBA will retain its security interest in the collateral until the allowed secured claim is paid in full.  The SBA will terminate its security interest in the collateral upon payment of the allowed amount of its secured claim. |
| Class 4- Non-priority Impaired Unsecured Claims | Class 4 is impaired by this Plan. The claims in this class shall be paid 10% of the allowed amount of their claims.  The claims in this class shall be paid a pro rata share of monthly installments of $1,000 commencing January 15, 2026.  The monthly installments shall increase by $1,000 per month on January 15 of each year.  Payments shall continue until the claimants in the class receive at least 10% of the allowed amount of their claims. . |
| Class 5-Equity Interests        Unimpaired | Class 5 is unimpaired by this Plan. The equity interest holders will retain their equity interests under this Plan. |

### Article 5:  Allowance and Disallowance of Claims

     5.01   <u>Disputed claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:  (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  The Debtor may object to the amount or validity of any claim within 30 days after the Effective Date of the Plan by filing a written objection to the claim with the Bankruptcy Court and serving a copy of the objection upon the claim holder.

     5.02   <u>Delay of distribution on a disputed claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

     5.03   <u>Settlement of disputed claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

     5.04   <u>Disputed Secured Claims.</u> The Debtor reserves the right object to and dispute the allowance and amount of any alleged secured claim.

     The Debtor will dispute the secured claims of the U.S. Small Business Administration, Dahl BQ, Inc., the Michigan Department of Treasury, KALSEE Credit Union, and Idea 247 Inc.  The basis for the dispute is that there is not sufficient value in the Debtor's assets in excess of the

amount of secured debt with higher priority to support allowance of these claims as secured claims.

### Article 6:  Provisions for Executory Contracts and Unexpired Leases

6.01   Assumed executory contracts and unexpired leases.  The Debtor will reject the following executory contracts and unexpired leases:

Real Estate lease with Rockzza II, LLC, unless the Debtor obtains an offer for assumption of the lease.

The Debtor shall assume the following executory contracts and unexpired leases:

1. Lease with Maha Holdings, LLC for Kalamazoo location;
2. Lease with Jenique LLC for Jenison, Michigan location; and
3. Lease with Kancov Investment Limited Partnership for Holland, Michigan location.

6.02   Executory contracts with Dickey's Barbecue Restaurant, Inc.  The Debtor will attempt to negotiate an agreed upon termination of its executory contracts with Dickey's Barbecue Restaurants, Inc.  If the Debtor is unable to negotiate a settlement it will retain special counsel to commence litigation against Dickey's to terminate, revoke, or rescind the agreements and to recover damages suffered by the Debtor in connection with its relationship with Dickey's.

6.03   Rejected executory contracts and unexpired leases.  Except for executory contracts and unexpired leases that have been assumed (and if applicable assigned) before the effective date or under section 6.01 of this Plan, or that are the subject of a pending motion to assume (and if applicable assign), the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 60 days after the date of the order confirming this Plan.

### Article 7:  Means for Implementation of the Plan

7.01 Payments under Plan. The Debtor will implement the Plan by continuation of its business operations and making the payments from its ongoing cash flow. In addition, any amounts received in any litigation with Dickey's after payment of the expenses of the litigation shall be used to make the payments under the Plan.

The Debtor will commence payments under the plan 30 days after confirmation of the Debtor's Plan.

7.02 Vesting of Property of Estate.   The Debtor will retain all of its property under the Plan and all property will re-vest in the Debtor pursuant to 11 U.S.C. 1141(b).  Upon confirmation of the Plan, the Debtor shall have title to all property and full power and authority to sell any property. In the event the case converts to Chapter 7 all property at the time of conversion will revest in the Chapter 7 bankruptcy estate.

   7.03 <u>Management of Debtor.</u> Mr. Fox and Mr. Kakabeeke will continue as the sole members of the Debtor.  Mr. Fox will continue to manage the Debtor's operations.  Mr. Fox will be compensated at the rate of $70,000.00 per year, plus payment of health insurance.  The company will also reimburse Mr. Fox for any out-of-pocket expenses he incurs on behalf of the Debtor.

   7.04 <u>Avoidance Actions. Except as set forth in the Plan,</u> the Debtor has and will retain its power to bring avoidance actions to recover any preferential or fraudulent transfers.  This includes, but is not limited to the following:

1. Preferential payments made to any creditor within 90 days of the Bankruptcy filing unless the creditor received payments totaling less than $7,575.00 during the 90 day period.
2. Recovery of other avoidable transfers that may come to light during the case.
3. Objecting to secured claims of creditors based upon the value of collateral securing their claims.

   If any creditor with an unperfected interest in any of the Debtor's assets asserts an interest in any asset, the Debtor reserves the right to bring an action to avoid such unperfected interest.

   7.05 <u>Litigation</u>.  As set forth above, if necessary the Debtor will commence litigation against Dickey's to obtain termination, recission or revocation of the Debtor's agreements with Dickey's and to recover damages suffered by the Debtor caused by Dickey's.

   7.06 <u>Sale of Assets.</u> The Debtor may elect to sell assets after confirmation of the Plan.  Any net proceeds after payment of any allowed secured claims shall be used to make payments under the Plan.

## Article 8:  General Provisions

   8.01 <u>Definitions and rules of construction</u>.  The definitions and rules of construction set forth in Code §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan.

   8.02 <u>Effective Date</u>.  The effective date of this Plan is 30 days after confirmation of the Debtor's Plan.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

   8.03 <u>Severability</u>.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    <u>Binding effect</u>.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.05    <u>Captions</u>.  The headings contained in this Plan are for convenience or reference only and do not affect the meaning or interpretation of this Plan.

8.06    <u>Controlling effect</u>.  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Michigan govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    <u>Corporate governance</u>.  In accordance with Code § 1123(a)(6), the Debtor's articles of organization are deemed amended as of the effective date to prohibit the issuance of nonvoting equity securities or membership interests.

8.08    <u>Retention of jurisdiction</u>.  The court retains jurisdiction with respect to matters involving the interpretation, consummation, execution, or administration of the confirmed plan.  This includes, but is not limited, to the following matters:  (a) to hear and determine any motions relating to assumption or rejection of executory contracts or unexpired leases and the allowance of any claims resulting therefrom; (b) to hear and determine any and all adversary proceedings; (c) to hear and determine any requests for allowance of administrative expense claims or objections thereof; (d) to enter and implement such orders as necessary to implement the provisions of this Plan and to resolve any dispute arising from implantation of the Plan; (e) to hear and determine all actions pursuant to §§ 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code and all collection matters related thereto and settlements thereof; (f) to hear and determine any request by the Debtor to sell any asset pursuant to § 363 of the Bankruptcy Code; (g) to hear and determine any dispute arising in connection with the interpretation, implementation, or enforcement of the Plan; and (h) to enter a final decree closing the case.

8.09    <u>Distributions.</u>  All Distributions under the Plan shall be made in accordance with the priorities established under the Plan.  Any cash payment made pursuant to the Plan may be made by check or wire transfer.  Distributions to holders of allowed claims will be made as follows:

(a) At the respective addresses set forth in the Debtor's Bankruptcy Schedules unless superseded by the address set forth in any Proof of Claim filed by the holder of claim;
(b) At the address set forth in any written Notice of Address Change delivered to the Debtor after the filing of any Proof of Claim; (or)
(c) Through wire transfer as provided to the Debtor prior to the first distribution under the Plan or, within thirty days' notice thereafter.  For any distribution that is scheduled to occur on a date that is not a business day, then the making of such payment or distribution or the performance of such act may be

completed on or as soon reasonably practical on the next succeeding business day.

8.10   <u>Disbursing Agent.</u>  If the Plan is consensual and confirmed under 11 U.S.C § 1191 (a), the Debtor shall act as the Disbursing Agent and make all the distributions to all classes as provided under the Plan.  The Debtor shall not be compensated for acting as Disbursing Agent.

If the Plan is a non-consensual Plan and is confirmed under 11 U.S.C. § 1191 (b) , the Sub Chapter V Trustee, Scott Chernich, shall make the payments to creditors under the Plan.  The Debtor shall make one monthly payment to Mr. Chernich on the fifth day of each month.  The Trustee shall distribute such payments as he deems appropriate in accordance with the payments set forth in the confirmed Plan.  Distributions of less than $5 will not be mailed each month, but will be mailed in a lump sum on an annual basis.  Mr. Chernich will be compensated upon request and as approved by the Court.

8.11   <u>Unclaimed Distributions.</u>  Returned or otherwise undeliverable distributions will remain in possession of the Debtor or the Disbursing Agent until such time as the distribution becomes deliverable.  The Debtor shall take reasonable steps to enable delivery of the distributions to the holder of the allowed claim.  All distributions returned and not claimed within six months shall be delivered to the Bankruptcy Court Clerk for deposit into the Registry Fund maintained by the Clerk.  Upon delivery to the Bankruptcy Court Clerk, the claim holder will have its claim for such undelivered distribution discharged and will be forever barred from asserting any claim against the Debtor or its property or estate for such distribution.

8.12   <u>Voting.</u>  Each holder of an allowed claim in an impaired class of claims shall be entitled to vote or reject the Plan as provided in such order as is entered by the Bankruptcy Court Establishing Procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order of the Bankruptcy Court.  A claim is "impaired" if, upon, among other conditions, the Plan alters the legal, equitable or contractual rights to such claim.  If the right of any claim holder is altered as to the amount to be paid, interest rate or length of payments, it is impaired.  A class that has accepted the Plan, if such Plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors that have accepted or rejected the Plan.

8.13   <u>Non-Consensual Plan Confirmation.</u>  If any impaired class of claims entitled to vote does not accept the Plan as provided for in 11 U.S.C. § 1126 (c), the Debtor reserves the right to amend or modify the Plan pursuant to 11 U.S.C. § 1127.

If an impaired class of claims rejects the Plan, the Debtor will request that the Bankruptcy Court confirm the Plan under 11 U.S.C. § 1191 (b).  Under that provision the Court may confirm the Plan if the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under, and is not accepted, the Plan.

Considering the Liquidation Analysis set forth on attached Exhibit A, the Debtor asserts that the Plan is fair and equitable, does not discriminate unfairly and may be confirmed pursuant to 11 U.S.C § 1191 (b).

8.14    Modification of the Plan.  Pursuant to 11 U.S.C. § 1193, the Debtor may amend or modify the Plan at any time before confirmation with notice to the creditors.  After confirmation the Debtor may modify the Plan only if the Plan has not been substantially consummated and any such modification must comport with the requirements of the Bankruptcy Code.  Any holder of a claim that has accepted the Plan shall be deemed to accept a modified or amended Plan if the proposed modification does not materially alter or adversely change the treatment of the claim. Debtor may, prior to the Effective Date, make technical changes and adjustment to cure any scrivener's errors or typos without order or approval of the Court, provided that such changes and adjustments do not adversely affect any claim in a material way.

### Article 9:  Discharge

If the Debtor's Plan is confirmed consensually under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in Code § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt:  (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed nonconsensually under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in Code § 1192.  The Debtor will not be discharged from any debt:  (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under Code § 523(a), except as provided in Federal Rule of Bankruptcy Procedure 4007(c).

### ARTICLE 10:  Effect of Confirmation of the Plan

10.1    Term of Bankruptcy Injunction or Stays.  Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in this case under 11 U.S.C. §§ 105 or 362 and in existence on the Confirmation Date shall remain in full force and effect until the effective date.

10.2    Effect of Confirmation on Liens.  Upon satisfaction of the Consensual Plan or Effective Date for the Nonconsensual Plan, the Debtor may apply to the Court for an order directing any necessary party to execute or delivery or join in the execution or delivery of, any instrument required to effect a transfer of property covered by the Plan and to perform any other act, including satisfaction of any lien, that is necessary for the consummation of the Plan.  See 11 U.S.C. § 1142(b).  Any unreasonable withholding of such delivery by any claim holder will entitle the Debtor to the costs and fees of seeking such delivery as approved by the Court.

10.3    Causes of Actions Reserved and Preserved.  As of the Effective Date any and all causes of action, and, without limitation, avoidance actions accrued to the Debtor under Chapter

5 of the Bankruptcy Code that are not otherwise resolved shall be preserved by and for the benefit of the Debtor and the Bankruptcy Estate and the proceeds of such causes of actions shall be retained by the Debtor and utilized for satisfaction of the Plan.  The Debtor reserves the right to object to any claim.

    10.4    <u>New Obligations.</u>  In light of the foregoing discharge of obligations, the Plan, and the payments promised herein, create new contractual obligations that will replace those obligations to the creditors that existed prior to the Effective Date.

    10.5    <u>Material Default.</u>  If the Debtor (1) fails to make any payment required under this Plan, or (2) fails to perform any other obligation required under this Plan for more than 14 days after the time specified in this Plan, then any affective creditor, interest holder, or any other party in interest may file and serve upon Debtor and Debtor's attorney (if any) a written Notice of Default at their most recent address listed in the case.  Debtor is in material default under this Plan if the Debtor fails within 21 days after service of that Notice of Default, plus an additional three (3) days if served by mail, either to cure the default or obtain from the Court an extension of time to cure the default or a determination that no material default occurred.  Notwithstanding the other provisions of this Plan, to the extent the Debtor has assumed an executory contract or unexpired lease, or to the extent that a creditor retains a lien under this Plan that was a consensual lien, the default provisions of that contract, lease, or lien documentation govern what constitutes a default for purposes of the rights and remedies thereunder, all subject to application-non-bankruptcy law and any exceptions set forth in this Plan.

    The Debtor must comply with post-petition tax obligations, including the timely filing of tax returns and payment of any taxes required by law.

    10.6    <u>Post-Confirmation Employment and Compensation of Professionals</u>.  From and after the Effective Date, the Debtor may, in the ordinary course of business and without necessity of any approval of the Court, employ and retain services of any professionals, including attorneys, accountants, and other professional as it deems necessary in the ordinary course of business.  Debtor may pay the post-confirmation fees and expenses of such professional persons for any matters as to which the professionals are employed**.**

Respectfully submitted,

Smokin' Dutchman Holdings, LLC

By: <u>/s/ Krage Fox</u>                                           Dated: December 9, 2024
      Krage Fox, Member

Dunn, Schouten & Snoap, P.C

By:<u>/s/ Perry G. Pastula</u>                                      Dated: December 9, 2024
      Perry G. Pastula (P35588)
      Attorneys for Debtor